8 Cal.App.3d 308 (1970)
87 Cal. Rptr. 258
CITY OF SAN DIEGO, Plaintiff and Appellant,
v.
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, LOCAL 127, et al., Defendants and Respondents.
Docket No. 9952.
Court of Appeals of California, Fourth District, Division One.
May 28, 1970.
*309 COUNSEL
John W. Witt, City Attorney, C.M. Fitzpatrick, Chief Deputy City Attorney, and Stuart H. Swett and R. Thomas Harris, Deputy City Attorneys, for Plaintiff and Appellant.
Bodle, Fogel, Julber & Reinhardt, Loren R. Rothschild, George E. Bodle, Daniel Fogel, Stephen Reinhardt and James H. Webster for Defendants and Respondents.
OPINION
COUGHLIN, J.
Plaintiff, City of San Diego, appeals from that part of an order denying its application for a temporary injunction restraining defendants, American Federation of State, County and Municipal Employees, Local 127, and others, from engaging in a strike or work stoppage.
The complaint in the case alleges 200 employees of the Utilities Department and 600 employees of the Public Works Department of the City are members of defendant Union. The total number of employees of its Utilities Department is 600 and of its Public Works Department is 1,200. Other city employees are not involved. Declarations filed in support of a temporary injunction allege the Utilities Department is responsible for providing water and sewage disposal services to the inhabitants of San Diego; the Public Works Department is responsible for the maintenance of streets, parks, public buildings, electrical systems, communications systems, parking meters and automotive equipment, for beach cleaning, erosion control *310 and for the collection and disposal of refuse; and in the event the union employees engage in a strike or work stoppage there would be a serious disruption in water distribution and sewage disposal services, accumulation of refuse and interference with the traffic signal and safety lighting systems, all of which would result in a serious hazard to the health, safety and welfare of the City.
The City asserts the issue on appeal is whether public employees have the right to strike. The Union meets this issue and asserts the additional issue whether denial of the temporary injunction was a proper exercise of the court's discretion.
The court denied an injunction upon the ground public employees lawfully may strike.
(1) In Almond v. County of Sacramento, 276 Cal. App.2d 32, 36 [80 Cal. Rptr. 518] (hearing by Supreme Court denied), one of the issues presented was whether a public employee may strike and the court, after reviewing some of the cases pertinent to the issue, stated: "Further review of cases is needless. The ruling that, absent an authorizing statute, a public employee has no right either to bargain collectively or to strike is well settled. It is settled by decisions of the Supreme Court itself and by that court's denial of hearings in courts of appeal decisions. This court (and we imply neither agreement nor disagreement) is bound by the rule."
In California the cases on the subject have involved either the right of public employees to bargain collectively or, granted statutory authority for such, the right to strike, which is a coercive practice to compel acceptance of collective bargaining demands. All support the rule as stated in Almond v. County of Sacramento, supra, 276 Cal. App.2d 32. The first case upon the subject in this state was Nutter v. City of Santa Monica (1946) 74 Cal. App.2d 292 [168 P.2d 741], which reversed a ruling of the trial court mandating collective bargaining. A hearing by the Supreme Court was denied. Subsequent statements of the rule occurred in City of Los Angeles v. Los Angeles etc. Council (1949) 94 Cal. App.2d 36, 40, 46-47 [210 P.2d 305], affirming an order enjoining a strike by public employees (hearing by the Supreme Court denied), State v. Brotherhood of R.R. Trainmen (1951) 37 Cal.2d 412, 416 [232 P.2d 857], Newmarker v. Regents of Univ. of California (1958) 160 Cal. App.2d 640, 646 [325 P.2d 558], Los Angeles Met. Transit Authority v. Brotherhood of Railroad Trainmen *311 (1960) 54 Cal.2d 684, 687 [8 Cal. Rptr. 1, 355 P.2d 905], Pranger v. Break (1960) 186 Cal. App.2d 551, 556 [9 Cal. Rptr. 293] (hearing by Supreme Court denied), and Berkeley Teachers Assn. v. Board of Education (1967) 254 Cal. App.2d 660, 671 [62 Cal. Rptr. 515] (hearing by Supreme Court denied).
This California common law rule is the generally accepted common law rule in many jurisdictions. (International Union of Operating Engineers, Local 321 v. Water Works Board, 276 Ala. 462 [163 So.2d 619, 620]; Fellows v. La Tronica, 151 Colo. 300 [377 P.2d 547, 550]; Norwalk Teachers' Assn. v. Board of Education, 138 Conn. 269 [83 A.2d 482, 31 A.L.R.2d 1133]; Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445 [26 So.2d 194, 165 A.L.R. 967]; Anderson Federation of Teachers v. School City of Anderson, ___ Ind. ___ [251 N.E.2d 15, 17]; Wichita Public Schools Emp. Union, Local No. 513 v. Smith, 194 Kan. 2 [397 P.2d 357, 359-360]; Board of Education v. Redding, 32 Ill.2d 567 [207 N.E.2d 427, 430]; State Board of Regents v. United Packing House etc. Workers (Iowa) 175 N.W.2d 110, 112; Mugford v. Mayor & City Council of Baltimore, 185 Md. 266 [44 A.2d 745, 162 A.L.R. 1101]; Minneapolis Federation of Teachers, Local 59 v. Obermeyer, 275 Minn. 347 [147 N.W.2d 358, 366]; City of Springfield v. Clouse, 356 Mo. 1239 [206 S.W.2d 539, 543, 546]; City of Manchester v. Manchester Teachers Guild, 100 N.H. 507 [131 A.2d 59]; Delaware River & Bay Authority v. International Organization etc. Pilots, 45 N.J. 138 [211 A.2d 789]; Railway Mail Assn. v. Corsi, 293 N.Y. 315 [56 N.E.2d 721] (affirmed 326 U.S. 88 [89 L.Ed. 2072, 65 S.Ct. 1483]); City of New York v. De Lury, 23 N.Y.2d 175, 182 [295 N.Y.S.2d 901, 906, 243 N.E.2d 128]; City of Minot v. General Drivers & Helpers Union No. 74 (N.D.) 142 N.W.2d 612, 618; City of Cleveland v. Division 268 of Amalgamated Assn., 57 Ohio L.Abs. 173 [41 Ohio Ops. 236, 90 N.E.2d 711, 714]; International Brotherhood etc. Workers v. Grand River Dam Authority (Okla.) 292 P.2d 1018; City of Pawtucket v. Pawtucket Teachers' Alliance, 87 R.I. 364 [141 A.2d 624]; City of Alcoa v. International Brotherhood of Electrical Workers, 203 Tenn. 12 [308 S.W.2d 476]; South Atlantic etc. Longshoremen's Assn. v. Harris County etc. Navigation Dist. (Tex.Civ.App.) 358 S.W.2d 658; Port of Seattle v. International Longshoremen's & Warehousemen's Union, 52 Wn.2d 317 [324 P.2d 1099]; see also United States v. United Mine Workers of America, 330 U.S. 258, 274, 280 [91 L.Ed. 884, 902-903, 905-906, 67 S.Ct. 677, 687, 689]; Hansen v. Commonwealth, 344 Mass. 214 [181 N.E.2d 843]; Philadelphia Teachers' Assn. v. LaBrum, 415 Pa. 212 [203 A.2d 34, 36].)
*312 The common law rule has been adopted or confirmed statutorily by 20 states and the federal government. (See City of New York v. De Lury, supra, 23 N.Y.2d 175, 182 [295 N.Y.S.2d 901, 905, 243 N.E.2d 128]; 5 U.S.C.A., § 7311.)
The reasons for the rule are many; apply public policy; relate generally to the fundamental differences between private and public employment as regards the processing and settlement of labor demands and disputes; take into account the authority of the public employer respecting both the method for fixing and the substance of the terms and conditions of public employment is limited to that prescribed by law; include a consideration of the overriding duty of the public employer to perform prescribed governmental functions; and furnish a constitutionally approved basis for classification in the premises. (Gen. see Nutter v. City of Santa Monica, supra, 74 Cal. App.2d 292, 297-298; Norwalk Teachers' Assn. v. Board of Education, supra, 138 Conn. 269 [83 A.2d 482]; State Board of Regents v. United Packing House etc. Workers (Iowa) 175 N.W.2d 110, 112; City of New York v. De Lury, supra, 23 N.Y.2d 175, 182-187 [295 N.Y.S.2d 901, 906, 909, 243 N.E.2d 128]; City of Minot v. General Drivers & Helpers Union No. 74 (N.D.) supra, 142 N.W.2d 612, 619; gen. see 31 A.L.R.2d 1142.) Of particular significance is the fact the employer-employee relationship in public employment is the product of law  constitutional, legislative and decisional  rather than the product of a contract as in private employment. (State v. Brotherhood of R.R. Trainmen, supra, 37 Cal.2d 412, 416-417; City of Los Angeles v. Los Angeles etc. Council, supra, 94 Cal. App.2d 36, 48; Perez v. Board of Police Comrs., 78 Cal. App.2d 638, 647 [178 P.2d 537]; Nutter v. City of Santa Monica, supra, 74 Cal. App.2d 292, 297-302; see also Fellows v. La Tronica, supra, 151 Colo. 300 [377 P.2d 547, 550]; Wichita Public Schools Emp. Union, Local No. 513 v. Smith, supra, 194 Kan. 2 [397 P.2d 357, 359-360].) The terms and conditions of public employment are fixed by the public through the processes of law, and acceptance of such employment requires acceptance of the processes by which the terms and conditions of employment are fixed, i.e., by law rather than by contract (City of Los Angeles v. Los Angeles etc. Council, supra, 94 Cal. App.2d 36, 47); confers benefits not available to the private employee which are the product of the processes of law, such as civil service tenure status and a vested right to retirement benefits (gen. see Kern v. City of Long Beach, 29 Cal.2d 848, 850 [179 P.2d 799]; Abbott v. City of San Diego, 165 Cal. App.2d 511, 517 [332 P.2d 324]); but also imposes a distinct responsibility attendant upon public service (City of Los Angeles v. Los Angeles etc. Council, supra, 94 Cal. App.2d 36, 48-49; Perez v. *313 Board of Police Comrs., supra, 78 Cal. App.2d 638, 651); and results in the relinquishment of certain rights enjoyed by private employees. (Board of Education v. Swan, 41 Cal.2d 546, 556 [261 P.2d 261]; City of Los Angeles v. Los Angeles etc. Council, supra, 94 Cal. App.2d 36, 48-49; Perez v. Board of Police Comrs., supra, 78 Cal. App.2d 638, 651; City of Springfield v. Clouse, supra, 356 Mo. 1239 [206 S.W.2d 539, 542].)
The foregoing concepts are not antagonistic to the conclusion statutory law may sanction contracts between the public employer and the public employee prescribing terms and conditions of employment (East Bay Municipal Emp. Union v. County of Alameda, 3 Cal. App.3d 578, 580 [83 Cal. Rptr. 503]); the method of reaching an agreement thereon, e.g., through collective bargaining (ibid.); and practices intended to compel acceptance of public employee demands, e.g., strikes. (Los Angeles Met. Transit Authority v. Brotherhood of Railroad Trainmen, supra, 54 Cal.2d 684, 687-693.) The common law rule public employees do not have the right to bargain collectively or to strike is predicated expressly on the necessity for and lack of statutory authority conferring such right. Where a statute authorizes collective bargaining and strikes it includes them within the methods authorized by law for fixing the terms and conditions of employment. Those who advocate the right of public employees to strike should present their case to the Legislature.
The Union contends the rule public employees may not strike absent statutory authorization should be reviewed in light of an asserted new concept of the equal protection of the law guarantee; and directs attention to recent decisions prescribing the tests for determining whether legislation involving "fundamental interests" applicable only to a particular class, such as public employees, conforms to the constitutional guarantee.
Wherever the issue has been raised, it has been held laws governing the rights of public employees to engage in union activities, collective bargaining, strikes and other coercive practices, not equally applicable to private employees, and vice versa, are premised on a constitutionally approved classification; and, for this reason, are not violative of the constitutional guarantee of equal protection of the law. (Railway Mail Assn. v. Corsi, 326 U.S. 88, 94-95 [89 L.Ed. 2072, 2076-2077, 65 S.Ct. 1483, 1488]; State v. Brotherhood of R.R. Trainmen, supra, 37 Cal.2d 412, 417-418; City of Los Angeles v. Los Angeles etc. Council, supra, 94 Cal. App.2d 36, 48-49; Perez v. Board of Police Comrs., supra, 78 Cal. App.2d 638, 647; City of Evanston v. Buick (7th Cir.1970) 421 F.2d 595; City of New York v. De Lury (1968) supra, 23 N.Y.2d 175, 185 [295 N.Y.S.2d 901, 903-909, *314 243 N.E.2d 128]  appeal to U.S. Supreme Court dismissed for want of a properly presented federal question [De Lury v. City of New York, 394 U.S. 455 (22 L.Ed.2d 414, 89 S.Ct. 1223)]; City of Detroit v. Division 26 of Amalgamated Assn., 332 Mich. 237 [51 N.W.2d 228, 233, 235]  confirmed in School Dist. for City of Holland v. Holland Education Assn., 380 Mich. 314 [157 N.W.2d 206, 208]; see also Rankin v. Shanker, 23 N.Y.2d 111, 116 [295 N.Y.S.2d 625, 629, 242 N.E.2d 802]  appeal to United States Supreme Court dismissed for want of a substantial federal question [Shanker v. Rankin (1969) 396 U.S. 120 (24 L.Ed.2d 305, 90 S.Ct. 396)]; gen. see Amell v. United States, 384 U.S. 158, 161 [16 L.Ed.2d 445, 447, 86 S.Ct. 1384, 1386]  which declares, without comment upon any constitutional question, by virtue of statute public employees are forbidden from exercising or asserting the right to strike.)
However, relying on the decisions in Shapiro v. Thompson, 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322], and Purdy & Fitzpatrick v. State of California, 71 Cal.2d 566 [79 Cal. Rptr. 77, 456 P.2d 645], the Union contends present requirements essential to a valid classification for equal protection of the law purposes have been extended beyond those previously prescribed; such a classification in cases involving a law affecting "fundamental interests" not only must reasonably relate to the purpose of the law but also must be "a necessary means of accomplishing a legitimate state interest" and the law must serve "to promote a compelling state interest" (Purdy & Fitzpatrick v. State, supra, 71 Cal.2d 566, 578-579); the right to strike is a "fundamental interest";[1] and the rule of law denying its members the right to strike unless authorized by statute, when measured by the foregoing requirements, violates the equal protection of the law guarantee because it is not necessary to accomplish nor does it promote *315 any legitimate compelling state interest.[2] The argument in support of this contention is premised on the fallacious application of the equal protection of the law requirements to a comparison of job classifications in public employment with job classifications in private employment rather than to a comparison of the characteristics fundamental to public employment pertinent to a determination of the terms and conditions of such employment, and the resolution of demands and disputes respecting such, with the characteristics fundamental to private employment pertinent to the same subjects. The Union specifies a number of job classifications and argues denying public employees holding such jobs the right to strike is not necessary to accomplish nor does it serve to promote a legitimate, compelling state interest. Thus, it argues the rule of law denying a gardener on a public golf course the right to strike while affording a gardener on a private golf course that right, does not serve a compelling state interest.[3] The reasons for the law denying public employees the right to strike while affording such right to private employees are not premised on differences in types of jobs held by these two classes of employees but upon differences in the employment relationship to which they are parties. The legitimate and compelling state interest accomplished and promoted by the law denying public employees the right to strike is not solely the need for a particular governmental service but the preservation of a system of government in the ambit of public employment and the proscription of practices not compatible with the public employer-employee relationship. (City of New York v. De Lury, supra, 23 N.Y.2d 175, 182 [295 N.Y.S.2d *316 901, 906, 243 N.E.2d 128].) Pertinent to the issue is the statement by the late President Franklin D. Roosevelt, a friend of union labor, quoted in several cases, that: "`Particularly, I want to emphasize my conviction that militant tactics have no place in the functions of any organization of Government employees.... [A] strike of public employees manifests nothing less than an intent on their part to prevent or obstruct the operations of Government until their demands are satisfied. Such action, looking toward the paralysis of Government by those who have sworn to support it, is unthinkable and intolerable.'" (Norwalk Teachers' Assn. v. Board of Education, supra, 138 Conn. 269 [83 A.2d 482, 484]; Anderson Federation of Teachers v. School City of Anderson, supra, ___ Ind. ___ [251 N.E.2d 15, 18]; City of New York v. De Lury, supra, 23 N.Y.2d 175, 183 [295 N.Y.S.2d 901, 907, 243 N.E.2d 128]; City of Alcoa v. International Brotherhood of Electrical Workers, supra, 203 Tenn. 12 [308 S.W. 476, 480]; see also City of Springfield v. Clouse, supra, 356 Mo. 1239 [206 S.W.2d 539, 542].)
The Union directs attention to statutes conferring upon the employees of certain transit districts the right to strike, e.g., Public Utilities Code section 90300, and assert this fact establishes the common law rule declaring public employees generally do not have the right to strike unless authorized by statute violates the equal protection of the law guarantee. Constitutionally approved reasons exist for differentiation between classes of employees with respect to laws fixing their terms and conditions of employment, including those involving the settlement of labor disputes. (Los Angeles Met. Transit Authority v. Brotherhood of Railroad Trainmen, supra, 54 Cal.2d 684, 694; California Federation of Teachers v. Oxnard, 272 Cal. App.2d 514, 522, 527 [77 Cal. Rptr. 497]; Minneapolis Federation of Teachers, Local 59 v. Obermeyer, supra, 275 Minn. 347 [147 N.W.2d 358, 363]; see also Railway Mail Assn. v. Corsi, supra, 293 N.Y. 315, affirmed 326 U.S. 88, 94-95 [89 L.Ed. 2072, 2076-2077, 65 S.Ct. 1483, 1488].) The invidious discrimination at which the equal protection of the law guarantee is aimed does not attach to the common law rule public employees generally do not have the right to strike unless authorized by statute because some statutes creating transit districts authorize the public employees of those districts to strike. (Los Angeles Met. Transit Authority v. Brotherhood of Railroad Trainmen, supra, 54 Cal.2d 684, 694; gen. see California Federation of Teachers v. Oxnard, supra, 272 Cal. App.2d 514, 522.)
The Union also contends, and the trial court concluded, public employees are authorized by statute to strike. A similar contention was made, adequately considered and rejected in Almond v. County of Sacramento, *317 supra, 276 Cal. App.2d 32, 36-38 (hearing by the Supreme Court denied). The contention is without merit.
(2a) Although a strike by public employees may be enjoined (City of Los Angeles v. Los Angeles etc. Council, supra (1949) 94 Cal. App.2d 36, 48; Delaware River & Bay Authority v. International Organization etc. Pilots, supra, 45 N.J. 138 [211 A.2d 789]; City of Manchester v. Manchester Teachers Guild, supra, 100 N.H. 507 [131 A.2d 59]; International Brotherhood etc. Workers v. Grand River Dam Authority (Okla.) supra, 292 P.2d 1018; City of Alcoa v. International Brotherhood of Electrical Workers, supra, 203 Tenn. 12 [308 S.W.2d 476]; South Atlantic etc. Longshoremen's Assn. v. Harris County etc. Navigation Dist. (Tex.Civ. App.) supra, 358 S.W.2d 658), defendant Union contends the order at bench denying a temporary injunction should be sustained upon the ground there is no showing of irreparable damage, citing School Dist. for City of Holland v. Holland Education Assn., supra, 380 Mich. 314 [157 N.W.2d 206, 210]. (Contra, Board of Education v. Redding, supra, 32 Ill.2d 567 [207 N.E.2d 427, 432].) However, the trial judge, as evidenced by his memorandum opinion, did not deny injunctive relief because there was no showing of irreparable damage, but because of an erroneous conclusion public employees have a right to strike.[4] (3) The memorandum opinion of a trial judge may be used to determine the basis for his decision. (Union Sugar Co. v. Hollister Estate Co., 3 Cal.2d 740, 750 [47 P.2d 273]; Coakley v. Ajuria, 209 Cal. 745, 749 [290 P. 33]; Winegar v. Gray, 204 Cal. App.2d 303, 312 [22 Cal. Rptr. 301].) (2b) Whether a preliminary injunction should issue is a matter within the discretion of the trial court. (Continental Baking Co. v. Katz, 68 Cal.2d 512, 527 [67 Cal. Rptr. 761, 439 P.2d 889]; gen. see 27 Cal.Jur.2d 109.) In the case at bench the evidence would have supported an order granting a preliminary injunction.[5] The trial court did not exercise its discretion in the *318 premises. Its decision was the exclusive product of an erroneous concept of the law.
That part of the order appealed from is reversed.
Brown (Gerald), P.J., and Whelan, J., concurred.
Respondents' petition for a hearing by the Supreme Court was denied September 24, 1970. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.
NOTES
[1] In the ensuing discussion we assume, but do not decide, the right of a public employee to strike is a "fundamental interest" as that term is used in Purdy & Fitzpatrick v. State, supra, 71 Cal.2d 566, 578-579. In Almond v. County of Sacramento, supra, 276 Cal. App.2d 32, 38, the court declared there is no case law holding a public employee has "a fundamental right to strike."

Reliance by the union on the principles expressed in Fort v. Civil Service Com., 61 Cal.2d 331 [38 Cal. Rptr. 625, 392 P.2d 385], Kinnear v. City etc. of San Francisco, 61 Cal.2d 341 [38 Cal. Rptr. 631, 392 P.2d 391], Bagley v. Washington Township Hospital Dist., 65 Cal.2d 499 [55 Cal. Rptr. 401, 421 P.2d 409] and City of Carmel-by-the-Sea v. Young, 2 Cal.3d 259 [85 Cal. Rptr. 1, 466 P.2d 225], is misplaced. The no-strike rule is not a restriction on the political activities of public employees.
[2] In Rankin v. Shanker, supra, 23 N.Y.2d 111, 116 [295 N.Y.S.2d 625, 629], the court declared it "has been uniformly and consistently held that a legitimate distinction between public and private employment is constitutionally permissible" with regard to a law prohibiting strikes by public employees, and such a law does not violate the equal protection of the law guarantee. An appeal in this case to the United States Supreme Court was dismissed (Shanker v. Rankin, 396 U.S. 120 [24 L.Ed.2d 305, 90 S.Ct. 396]). This dismissal occurred after the decision in Shapiro v. Thompson, 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322], upon which the Union relies.
[3] The Union's argument premised on a consideration of specific job classifications. assuming it to be applicable, urges the erroneous conclusion the law declaring public employees may not strike unless authorized by statute is invalid as to all job classifications because it is invalid as to some and, as applied to the case at bench, the order denying an injunction as to all classifications was proper because it should have been denied as to some. It is well settled, a law applicable to a particular class claimed to be unconstitutional because the classification does not comply with equal protection of the law requirements may be attacked only by a person of the alleged unconstitutionally constituted class. (Murphy v. California, 225 U.S. 623 [56 L.Ed. 1229, 32 S.Ct. 697, 699]; In re Willing, 12 Cal.2d 591, 597 [86 P.2d 663]; Wholesale Tobacco Dealers Bureau v. National etc. Co., 11 Cal.2d 634, 661 [82 P.2d 3, 118 A.L.R. 486]; Estate of Monks, 48 Cal. App.2d 603, 614-615 [120 P.2d 167]  appeal to U.S. Supreme Court dismissed  317 U.S. 590 [87 L.Ed. 483, 63 S.Ct. 50].)
[4] The trial judge in his memorandum opinion stated: "The case at hand is limited to the bald proposition of whether or not a public employee has a right to strike under the case and statute law of California."
[5] We need not detail the factors guiding the trial court in the exercise of its discretion whether to grant or deny a preliminary injunction except to note the evidence at bench supports a conclusion the intended purpose of the strike was to maintain the employment status of the striking employees but, through work stoppage, to prevent the city from furnishing services it is required by law to furnish in order to compel acceptance of the terms and conditions of employment they demanded. An unlawful interference with the discharge of duties imposed upon the City by law may be enjoined. (Northwestern Pac. R.R. Co. v. Lumber & Sawmill Workers' Union, 31 Cal.2d 441 446 [189 P.2d 277].) As the strike contemplated by defendant public employees would be unlawful the interference with the discharge of the duties imposed on the city by law effected through their strike would be unlawful. The severity of the interference may vary with the type of services the city is required to furnish as reflected in the job classifications of the employees involved. The interference may be intensified by practices ordinarily attendant upon a strike such as picketing and the honoring of picket lines by other public employees extending the work stoppage to occupations other than those held by the striking employees. These factors properly might be considered by the court in determining the necessity for and scope of any preliminary injunction it might issue. (Gen. see Board of Education v. Redding, supra, 32 Ill.2d 567 [207 N.E.2d 427, 432]; City of Minot v. General Drivers & Helpers Union No. 74 (N.D.) supra, 142 N.W.2d 612, 618.)